518

[939 NE2d 1206, 914 NYS2d 76]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GREGORY TAYLOR, Appellant.

Argued October 13, 2010; decided November 18, 2010

## POINTS OF COUNSEL

*Benjamin N. Cardozo School of Law Criminal Appeals Clinic*, New York City (*Jonathan H. Oberman* and *Stanley Neustadter* of counsel), for appellant. I. The evidence is insufficient to establish a brutal, prolonged course of conduct against a particularly vulnerable victim where the fatal act was not so uncommonly brutal as to reflect evil, it occurred abruptly, and it did not prolong the suffering of the victim, who the evidence could not prove was alive when the defendant covered her head with a plastic bag. (*People v Suarez*, 6 NY3d 202; *People v Kibbe*, 35 NY2d 407; *People v Mills*, 1 NY3d 269; *People v Poplis*, 30 NY2d 85; *People v Best*, 202 AD2d 1015, 85 NY2d 826; *People v Mancini*, 7 NY3d 767; *People v Bowman*, 48 AD3d 178; *People v Boyce*, 36 AD3d 711; *People v LaGasse*, 56 AD3d 1151; *People v Georgiou*, 38 AD3d 155.) II. The evidence is insufficient to prove that the defendant, though impaired by crack, was utterly indifferent to human life when he administered the fatal act in the heat of a violent altercation or later when he believed the victim was already dead after he failed to detect breathing or a heartbeat. (*People v Feingold*, 7 NY3d 288; *People v Jean-Baptiste*, 11 NY3d 539; *People v Suarez*, 6 NY3d 202; *People v Jernatowski*, 238 NY 188; *People v Roe*, 74 NY2d 20; *People v Wells*, 53 AD3d 181; *People v Coon*, 34 AD3d 869.) III. The evidence is consistent only with intentional conduct and therefore cannot be depraved indifference murder where the court endorsed the People's view that the defendant had animosity toward the victim, a motive to kill her, total control over her

while she was isolated, contemplated killing her, and knew she was alive when he tightly tied a plastic bag over her head. (*People v Suarez*, 6 NY3d 202; *People v Payne*, 3 NY3d 266; *People v Hafeez*, 100 NY2d 253; *People v Gonzalez*, 1 NY3d 464; *People v Poplis*, 30 NY2d 85; *People v Best*, 202 AD2d 1015; *People v Bowman*, 48 AD3d 178; *People v Atkinson*, 21 AD3d 145, 7 NY3d 765; *People v Roe*, 74 NY2d 20.) IV. The foregoing arguments are preserved for this Court's review. (*People v Feingold*, 7 NY3d 288; *People v Jean-Baptiste*, 11 NY3d 539; *People v Hawkins*, 11 NY3d 484; *Matter of Santucci v Kohn*, 138 AD2d 603; *People v Payne*, 3 NY3d 266.)

*Robert T. Johnson, District Attorney*, Bronx (*Frances Y. Wang* and *Peter D. Coddington* of counsel), for respondent. Defendant's challenge to the legal sufficiency of the evidence is unpreserved and meritless. (*People v Suarez*, 6 NY3d 202; *People v Feingold*, 7 NY3d 288; *People v Hawkins*, 11 NY3d 484; *People v Gray*, 86 NY2d 10; *People v Gomez*, 65 NY2d 9; *People v Jean-Baptiste*, 11 NY3d 539; *People v Gonzalez*, 1 NY3d 464; *People v Payne*, 3 NY3d 266; *People v Hafeez*, 100 NY2d 253; *People v Dekle*, 56 NY2d 835; *People v Sala*, 95 NY2d 254.)

**OPINION OF THE COURT**

JONES, J.

On this appeal, we are called upon to determine whether defendant preserved a legal sufficiency challenge to his depraved indifference murder conviction and, if preserved, whether his conviction should be affirmed. Because defendant sufficiently preserved that challenge and the conviction is not in accord with this Court's precedents regarding depraved indifference murder, we reverse the Appellate Division order.

On May 11, 2004, a female victim was found dead on the roof of an apartment building located in the Bronx. She was found partially clothed and barefooted with a black plastic bag covering her head. The plastic bag was knotted tightly around her neck. An autopsy performed on the victim's body revealed a one-half-inch laceration above her right eyebrow, abrasions on her cheek and neck, and purple discoloration of her face. The medical examiner found hemorrhaging at the site of the abrasions and listed the cause of death as "blunt impact of [the] head and compression of [the] neck and chest."

Defendant was a resident at the building where the victim was found. That building was equipped with two video cameras on each floor. Videos from May 5th and May 6th

showed defendant approaching the victim and entering his apartment with her at night, stepping back into the hallway several hours later, and carrying her body to the roof in the morning. Days later, a search of his apartment revealed beads matching the victim's broken necklace scattered throughout defendant's apartment and bloodstains on the bedroom wall and door. Defendant was later taken into custody where he made a series of statements.

According to defendant, he and the victim smoked crack cocaine on the night of May 5th. Sometime later, she attacked him, and he hit her to protect himself. She then became quiet and he went to sleep. Defendant gave conflicting statements as to whether the victim was dead or alive when he awoke in the morning, but admitted covering her head with a plastic bag to stop the blood from spreading and placing her on the roof of his building.

A grand jury indicted defendant for second-degree depraved indifference murder and first-degree manslaughter. At the close of trial, defendant moved to dismiss the depraved indifference murder charge based upon the legal insufficiency of the evidence, citing *People v Suarez* (6 NY3d 202 [2005]). Defendant argued that his actions did not fall within the ambit of depraved indifference murder as detailed in *Suarez* and prior cases where depravity was found, citing *People v Best* (85 NY2d 826 [1995]) and *People v Poplis* (30 NY2d 85 [1972]). He further argued that the evidence adduced by the People was illustrative of intentional acts and reasoned that such acts are "not the theory of depraved indifference murder." Supreme Court denied the motion, stating that it was "a question of fact ultimately for the finder of fact."

The jury convicted defendant of depraved indifference murder. The Appellate Division, with one dissenting Justice, affirmed (62 AD3d 605 [2009]). The court concluded (*id.* at 608) that "defendant's appellate challenge to the legal sufficiency of the evidence ha[d] not been preserved inasmuch as his trial motion to dismiss was based on" *Suarez* and his appeal was based on *People v Feingold* (7 NY3d 288 [2006]).* The dissent, however, concluded that defendant's argument was preserved and that his conviction was not supported by legally sufficient evidence. A Justice of the Appellate Division granted defendant leave to appeal. We now reverse.

---

* This Court decided *Feingold* months after Supreme Court rendered defendant's judgment of conviction in this case.

In *Suarez*, a majority of the Court explained the limited circumstances in which a defendant may be convicted of depraved indifference murder where only a single victim has been endangered (6 NY3d at 212-213). Because defendant moved to dismiss the depraved indifference murder charge for legal insufficiency pursuant to *Suarez*, he properly preserved the issue for appellate review. As we explain below, it is incorrect to suggest that an argument under *Suarez* is fundamentally different from one based on *Feingold*.

To support a depraved indifference conviction, the People must demonstrate that defendant, "[u]nder circumstances evincing a depraved indifference to human life, . . . recklessly engage[d] in conduct which create[d] a grave risk of death to another person, and thereby cause[d] the death of another person" (Penal Law § 125.25 [2]). This Court has cautioned that depraved indifference murder should rarely be charged in a one-on-one killing (*Suarez*, 6 NY3d at 210). Most killings "are suitably punished by statutes defining intentional murder or manslaughter in the first or second degree or criminally negligent homicide" (*id.* at 211). Thus, those killings do not satisfy the depraved indifference standard (*id.*). In the limited cases where depraved indifference is applicable, "intent to [harm or] kill is absent," but "acts . . . marked by uncommon brutality . . . coupled . . . with depraved indifference to the victim's plight" are present (*id.* [internal quotation marks omitted]). The Court has made clear that "where defendant's conscious objective was to 'intentionally injur(e)' the victim," there can be " 'no valid line of reasoning that could support a jury's conclusion that defendant possessed the mental culpability required for depraved indifference murder' " (*id.* at 209, quoting *People v Hafeez*, 100 NY2d 253, 259 [2003]).

The *Suarez* Court explained two fact patterns in which a one-on-one killing could result in a depraved indifference conviction. While we noted that "other extraordinary cases" had arisen in which such convictions were upheld (*id.* at 213), we said that these two fact patterns "have recurred" (*id.* at 212). The first is "when the defendant intends neither to seriously injure, nor to kill, but nevertheless abandons a helpless and vulnerable victim in circumstances where the victim is highly likely to die" (*id.*; *see People v Mills*, 1 NY3d 269 [2003] [defendant prevented others from aiding and abandoned a drowning boy who died after defendant pushed him into the water; the boy did not resurface either because he accidentally struck his head or had an

epileptic seizure]; *People v Kibbe*, 35 NY2d 407 [1974] [defendants robbed an intoxicated victim and stranded him on a dark, remote, snowy road, partially clothed and barefoot; the victim was struck by a passing truck and killed]). The second is when the "defendant—acting with a conscious objective not to kill but to harm—engages in torture or a brutal, prolonged and ultimately fatal course of conduct against a particularly vulnerable victim" (6 NY3d at 212; *see Best*, 85 NY2d 826 [1995] [defendant repeatedly beat his nine-year-old son, inflicting large open wounds through which bacteria entered and eventually caused his death]; *Poplis*, 30 NY2d 85 [1972] [defendant caused the death of a 3½-year-old child by repeatedly beating her over a course of several days]).

*Feingold*, decided after defendant's conviction here, did not reject, but extended, *Suarez*'s reasoning. *Suarez* and *Feingold* were the last of the series of cases in which our view of depraved indifference murder "gradually and perceptibly changed" (*Policano v Herbert*, 7 NY3d 588, 602 [2006]) from that expressed in *People v Register* (60 NY2d 270 [1983]), which had held that "depraved indifference to human life" was not a mental state but referred to an objectively-determined degree of risk. In *Feingold*, we said "explicitly" for the first time that "depraved indifference to human life is a culpable mental state" (7 NY3d at 294). The two fact patterns discussed in *Suarez* exemplify that mental state. Under both *Suarez* and *Feingold*, the decisive question is whether defendant acted with the state of mind required by the depraved indifference murder statute—"an utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not" (*Suarez*, 6 NY3d at 214).

Here, the evidence was legally insufficient to establish depraved indifference murder. In this case, defendant struck the victim on her head and went to sleep. After he awoke, defendant knotted a plastic bag over the victim's head and dumped her body on the roof of his building. As the dissent below noted, the People did not establish "torture or a brutal, prolonged" course of conduct (62 AD3d at 609). These facts do not fall within the limited nature of a depraved indifference murder set forth by this Court, which requires "utter depravity, uncommon brutality and inhuman cruelty" and "indifference to the victim's plight" (*Suarez*, 6 NY3d at 211, 216).

Accordingly, the Appellate Division order should be reversed, the first count of the indictment dismissed and a new trial

ordered on the second count of the indictment charging man-slaughter in the first degree.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, SMITH and PIGOTT concur.

Order reversed, etc.